IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LEONARD KELLY HUFF, JR., #742100 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv9 |
| BRIAN COLLIER, ET AL. | § | |

<u>REPORT AND RECOMMENDATION OF THE</u>
<u>UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Leonard Kelly Huff, Jr., a prisoner currently confined at the Gib Lewis Unit within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se* and *in forma pauperis*, filed this civil-rights proceeding pursuant to 42 U.S.C. § 1983. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the proceedings. For the reasons explained below, the Court recommends that Plaintiff's lawsuit be dismissed, with prejudice, pursuant to 28 U.S.C. § 1915A.

**I. Huff's Amended Complaint**

Huff's amended complaint, (Dkt. #19), is the operative pleading in this lawsuit. An amended complaint entirely supersedes and takes the place of the original complaint. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736 (5th Cir. 1986). He is suing (1) Brian Collier, TDCJ Director, (2) Warden McDaniels, (3) Dr. Davenport, Psychiatrist, (4) Dr. Knopp, Mental Health Provider, and (5) Officer Lott for actions occurring at the Skyview/Hodge Unit complex. While Huff's amended complaint remains difficult to decipher, the Court understands that he complains about various conditions of his confinement.

1

Huff maintains that Defendant Collier, as Director of TDCJ, was "informed of [his] monies being held by inmate trust fund and failed to investigate the situation properly, (Dkt. #19, pg. 3). He notes that the "warden staff" are beating prisoners up and "helping the nurses force medication upon inmates." *Id*. When identifying Defendant McDaniels, Huff states that the wardens "are not trained professionals." *Id*. He further asserts that Defendant Davenport "has had several medications on me before that were not needed" and that he was recently "injected with a medication that gave me side effects, I survived it." *Id*. Defendant Knopp has "been making mistakes with my medical dosage so far." *Id*.

With respect to Defendant Lott, Huff maintains that "they bring this officer with his own squad of beating up bag's [sic], they come 3 or 4 at a time and ordered by Major Cooper to hurt inmates that are mentally ill." *Id*. Huff continues his allegations as follows:

> I'm asking that Warden McDaniels and Asst. Warden Bobbi Thomas be brought to justice because these wardens have known of these acts and cruelty done to the inmates on this unit and myself. By the officers and mental health psychiatrist, LVNs and even the RNs some of these individuals have over general over dosage authority of the [sic] when it comes to medical mental health. Officer Lott COIV I'm asking be brought in for questioning about the hurt that he professionally inflicted upon me on A Pod receiving. I informed the courts recently of the incident. An they were given my statement. Wardens refused to let us shower or change clothes or linen for over 10 days […] no soap given or towels or [sic].

*Id*. at pg. 4. Huff seeks a release on his trust fund account and damages for mental anguish, emotional distress, and abuse.

In an attached letter to his amended complaint, Huff explains that prison officials have still not opened his trust fund account, so he is without toothpaste, thermals, food, boots, and other commissary items. He remarks on his mental health, articulating that he is given psychiatric medications, but they "are not doing [sic] properly," and that he is trying to maintain even though

2

"they are taking food away from [him]." He explains that he "lost no pounds," but weighs less than he did last year. He further notes that, this morning, he "refused a regular tray" and therefore was not served his morning meal after the officer "closed [his] hand up in the serving slot."

Huff states that he has been having verbal conflicts with the officers recently "talking to him badly" and "trying to get me to talk bad to them." He reported the incident, but he "can't get any help." A different, unidentified officer is causing trouble by "refusing to put their mail in the box" and "refuses to help offenders with just about anything that the offender may need." Huff insists that he has "tried to the best of [his] abilities to handle the situation" and is being patient.

## II. Legal Standards

Under 28 U.S.C. § 1915A, a court shall review any complaint in a civil action wherein a prisoner seeks redress from a governmental entity or officer, or employee of a governmental entity. During its review, the court must identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr Cnty., Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts

3

alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v, FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is **not** akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

Although all well-pleaded facts are taken as true, the district court need not accept true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. Nov. 7, 2012) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

**III. Discussion and Analysis**

The Court understands that Huff raises claims concerning the conditions of his confinement while imprisoned at the Skyview/Hodge prison complex. He explains that prison officials placed a hold on his prisoner trust account, refuse to lift the hold, "force medications upon inmates," beat up prisoners, make mistakes with dispensing medications, lack professionalism and training, and neglect mental health.

As an initial matter, however, Huff does not provide details, specifics, or any elaboration on his claims such that it is plausible that the named Defendants are liable. He generally complains about his imprisonment—without identifying a *specific* action Defendants undertook that harmed him or violated his constitutional rights, which is required under section 1983. *See R.A.M. Al-Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995) (explaining that conclusory allegations are insufficient in a section 1983 proceeding). Huff's amended complaint is conclusory and should be dismissed.

*1. Conditions of Confinement—Lack of Harm*

Confinement in prison is a form of punishment subject to scrutiny under the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The Supreme Court has repeatedly stressed that the Constitution does not mandate comfortable prisons and conditions that are "restrictive or even harsh … are part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 347. A prisoner seeking relief under section 1983 must allege an actual physical injury—more than a *de minimus* physical injury—to state a claim for physical or emotional damages. *See* 42 U.S.C. § 1997e(e). "In sum, the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those

5

which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).

The United States Court of Appeals for the Fifth Circuit has held that indicia of confinement constituting cruel and unusual punishment includes the wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. *See Wilson v. Lynaugh*, 878 F.2d 846, 848 (5th Cir.), *cert. denied*, 493 U.S. 969 (1989). A prison official may be held liable, nonetheless, only if he "ha[s] a sufficiently culpable state of mind," which, in context of prison conditions, is one of deliberate indifference to a prisoner's health and/or safety. *Torres*, 972 F.3d at 662 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference is an extremely high standard to meet: A prison official acts with deliberate indifference only if he (1) knows that the prisoner faces a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id*. at 663.

In other words, a "deliberately indifferent state of mind requires that the official knows of an disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020). Negligence and even gross negligence will not suffice. *Torres*, 972 F.3d at 663.

Additionally, 42 U.S.C. § 1997(e), enacted as part of the Prison Litigation Reform Act (PLRA), provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . ." (emphasis supplied); *see also Siglar v. Hightower*, 112 F.3d

191, 193-94 (5th Cir. 1997) (holding that a sore and bruised ear lasting for three days was *de minimus* and did not meet the physical injury requirement found in the PLRA). The law in this circuit is clear: In order to state an Eighth Amendment claim, a prisoner must have "suffered at least some injury." *See, e.g., Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (unpublished) (affirming the dismissal of a prisoner's excessive force claim, holding that the prisoner's split lip was a *de minimus* injury and the conduct was not repugnant to the conscience of mankind).

Here, a review of Huff's amended complaint, (Dkt. #19), reveals that he failed to plead harm. While he represents that officers "beat up" prisoners, dispense incorrect medication dosage, and neglect the needs of prisoners requiring mental health, he offers no elaboration or specifics—and, more importantly, fails to articulate how *he* was harmed or injured by the acts of any Defendant. For example, Huff states that medicine is dispensed incorrectly—but he fails to plead that his own medication was dispensed incorrectly or that he was harmed by his dispensed medication. One allegation, "they are giving me psych. medications that are completely not ding[sic] properly," (Dkt. #19, pg. 6), is indecipherable. Nevertheless, Huff explains that he suffered side effects from a medicated injection—an occurrence not limited to prisoners—but that he "survived it." *Id*. at pg. 3. These statements do not plead or indicate harm.

Instead, the entire complaint shows that Huff is raising concerns for all the prisoners at this unit. But a person who claims the deprivation of a constitutional right must "prove some violation of their personal rights." *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). In other words, a section 1983 civil rights action is a personal suit; it does not accrue to a relative or bystander. *See Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (unpublished) ("In addition, Gregory would lack standing to seek § 1983 damages for violations of other prisoners'

rights . . ."). Accordingly, Huff's various concerns about the general conditions of confinement for the prison population at the Skyview/Hodge Unit—lack of proper mental health care, treatment of the prisoners, general lack of correct medication dosages, "cruelty to done to inmates"—do not indicate that his constitutional rights were violated, and they should be dismissed.

To the extent Huff insists that Defendant Davenport, as his treating psychiatrist, prescribed a different medication, or prescribes medications he disagrees with, or misdiagnoses him, such claims would also fail to state for deliberate indifference to his serious mental health needs. In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Similarly, any claim that Defendants made "mistakes" in his medication dosage, fails to state a claim because it is well-settled that the failure to diagnose—or even an incorrect diagnosis—does not constitute deliberate indifference. *See, e.g.*, *Lewis v. Evans*, 440 F. App'x 263, 265 (5th Cir. 2011) (unpublished) ("Although Evans failed to diagnose Lewis's infected ear and folliculitis, it is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.")

Huff further states that he has been having recent verbal conflicts with prison staff and vaguely describes an incident wherein he was injured inside his food slot, refused a food tray, and the slot closed—resulting in bleeding but nothing was "broken." He explains that prison staff "are talking to [him] badly and trying to get [him] to talk bad to them or threaten them in a way so they will have a reason to retaliate against me," (Dkt. #19, pg. 8)

8

As an initial matter, Huff makes no mention of any specific act of retaliation. Moreover, mere threatening language, comments, and attitudes do not rise to the level of a constitutional violation. *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Huff's various complaints about prison staff speaking to him "badly" fail to state a claim and they should be dismissed.

*2. Prison Trust Fund Account, Prison Property, and Delay of Toiletries*

Huff further asserts that Defendant Collier, as Director of TDCJ, "was informed of [his] monies being held by inmate trust fund and failed to investigate the situation properly," (Dkt. #19, pg. 3). He alleges that "they still refuse to open my trust fund account in Huntsville," he fears for his life, and his property is missing. Huff notes that his property, which he has retained for many years, is missing—including thermals, notebooks, envelopes, radio, personal mail, unidentified legal mail, pencils, pens, paper, mixing bowls, and art tablets—and will "probably never [to] be seen again." Huff laments that he can only plea and be patent, as the authorities will not open an investigation into the prison staff.

These claims fail to state claims upon which relief may be granted. With respect to Huff's prisoners trust fund account statement/monies, his assertions that his "monies are being held" up and that they "refuse to open [his] trust fund account in Huntsville," do not allege facts which, taken as true, state any claim which is plausible on its face and thus do not raise a right to relief above the speculative level. Huff's claims concerning his trust fund account in his amended complaint provide only naked assertions devoid of further factual enhancement. These claims should be dismissed.

Similarly, Huff's property claims suffer the same fate. Otherwise known as the *Parratt/Hudson* doctrine, the random, unauthorized, and even negligent deprivation of a property

9

or liberty interest does not violate procedural due process if the State furnishes an adequate post-deprivation remedy. *See Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir. 1991) (emphasis added); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981). Before the doctrine can be applied, three pre-deprivation conditions must be met: (1) that the deprivation was predictable; (2) that the pre-deprivation process be impossible, making any additional safeguards useless; and (3) that the conduct of the state actor be unauthorized. When these conditions exist, the State cannot be required to do the impossible by providing a pre-deprivation process. *See Charbonnet v. Lee*, 951 F.2d 638, 642 (5th Cir. 1992); *Myers Klevenhagen*, 97 F.3d 91, 94-95 (5th Cir. 1996).

In other words, the deprivation of property by prison officials—even when negligent or intentional—does not violate the Due Process Clause of the Fourteenth Amendment provided that an adequate state post-deprivation remedy exists. *Hudson*, 468 U.S. at 533; *see also Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988) ("The Due Process Clause is not implicated by a state officials negligent act causing unintended loss of property.").

The Texas state judicial system provides an adequate state post-deprivation remedy. *See* Tex. Gov. Code Ann. Art. 501.007 (Vernon Supp. 1994); *see also Murphy Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) ("In *Hudson v. Palmer*, the Supreme Court held that deprivation of property caused by the misconduct of state officials does not infringe constitutional due process provided adequate state post-deprivation remedies exist. In Texas, as in many other states, the tort of conversion fulfills this requirement.").

Here, if Huff's personal property suddenly went "missing," then the deprivation of his property—whether the property was stolen or lost negligently—was necessarily a random,

10

unauthorized act and, therefore, not a due process violation. Huff had a post-deprivation remedy in state court, and his claims are meritless under *Parratt*/*Hudson*. All of his property claims should be dismissed.

Turning to Huff's assertions concerning the lack of showers, towels, soap, clean clothes, and clean linens for over ten days between December 21 through January 4, the Court determines that these claims also fail to state a claim. Huff does not plead any facts indicating that he was harmed by the lack of these toiletries for a brief period.

Moreover, his general complaints about the lack of toiletries does not indicate a constitutional violation and should be dismissed. *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) ("Hamilton alleges that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period. We find that none of these allegations give rise to a constitutional claim.").

## RECOMMENDATION

For these reasons, the undersigned recommends the above-styled civil action be dismissed, with prejudice, for the failure to state a claim upon which relief may be granted.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v.*

11

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 12th day of September, 2022.

*K. Nicole Mitchell*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE